UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


<u>Adam Mentus</u>

   v.                                    Civil No. 12-cv-447-JD
                                                   Opinion No. 2013 DNH 137

<u>Warden, New Hampshire</u>
<u>State Prison</u>


<u>O R D E R</u>

     Adam Mentus, proceeding pro se, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Mentus challenges his state court conviction of manslaughter on the grounds that the state court violated his Fifth, Sixth, and Fourteenth Amendment rights by failing to authorize the amount he requested to hire a gun expert and that the prosecutor's closing argument denied his right to a fair trial.  The warden moves for summary judgment.  Mentus has not responded to the motion.


<u>Standard of Review</u>

    In habeas proceedings as in other civil cases, "[s]ummary judgment is proper if there is no genuine issue as to any material fact and the undisputed facts show that the moving party is entitled to judgment as a matter of law."  <u>Kuperman v. Wrenn</u>, 645 F.3d 69, 73 (1st Cir. 2011); <u>see also</u> Fed. R. Civ. P.

81(a)(4). When a motion for summary judgment is unopposed, the court nevertheless must consider the motion under the summary judgment standard. Sanchez-Figueroa v. Banco Popular de P.R., 527 F.3d 209, 212 (1st Cir. 2008).

### Background[1]

Mentus and Nathan Caron went to a firearms store where Caron bought a handgun. Later in the day, Mentus and three others planned to go to a sandpit to fire the gun. Deirdre Budzyna got into the car to drive to the sandpit, and Mentus sat behind her in the car.

Moments after getting into the car, Mentus took the loaded gun out of his pocket. As he held the gun in his right hand, it fired. The bullet went through the seat and hit Budzyna, puncturing her lung. She got out of the car, and Menus called 911. Budzyna later died at the hospital.

Mentus was charged with manslaughter. Because he was indigent, Mentus was represented by counsel from the New Hampshire Public Defender's office. Before trial, counsel asked the court to authorize, pursuant to RSA 604-A:6, payment of $3,000.00 to hire Gregory Danas as a firearms expert. The court

---

[1] The background information is taken from State v. Mentus, 162 N.H. 792 (2011).

held a hearing and initially authorized $750.00.  Because that was not enough to hire Danas, counsel asked the court to reconsider the allocation.  On reconsideration, the court authorized $1,200.00, which was still not enough to hire Danas.

Instead of Danas, the defense hired a lawyer who was involved in litigation against firearm manufacturers to serve as the firearms expert.  The court ruled that the lawyer was not qualified to testify as an expert.  As a result, Mentus did not have a firearms expert at trial to support his defense that the gun misfired.  A firearms expert did testify on behalf of the state.

In his closing argument at trial, the prosecutor said:

> There's always a risk.  The way we handle guns that are even unloaded.  Once its loaded, there's a risk, and you can't let it bump into something.  And while it may [misfire] when you drop it on the ground, what does that mean? . . .  That means you shouldn't drop it on the ground.  If you've got that gun and its loaded, [it] better be in your holster with a triple safety.  And when you pull it out, you better not drop it on the ground or you're responsible for that.

Mentus, 162 N.H. at 798.  Defense counsel objected that the prosecutor's statement meant that a person would be reckless per se if he dropped a gun which was a misstatement of the law.  The trial judge overruled the objection.

Mentus was convicted of manslaughter.  On appeal, Mentus challenged the trial court's decision to authorize only $1,200.00

for his expert witness, rather than the full amount he requested, and the trial court's failure to sustain the defense's objection to the prosecutor's closing argument.  The New Hampshire Supreme Court reviewed both issues under the state law "unsustainable exercise of discretion standard."  Id. at 795 (citing State v. Sweeney, 151 N.H. 666, 675 (2005)), & 798 (citing State v. Sanchez, 152 N.H. 625, 628 (2005)).  The trial court's decisions were affirmed.

## Discussion

In support of relief under § 2254(d), Mentus raises two claims.  He contends that his conviction was based on a denial of his rights under the Fifth, Sixth, and Fourteenth Amendments when the state court denied him sufficient funds to hire a firearms expert, despite his indigency.  He also contends that his rights to a fair trial under the Fifth and Fourteenth Amendments were denied because the trial court did not sustain his objection to the prosecutor's closing argument.  The warden argues that Mentus's claims are not exhausted or procedurally defaulted, cannot be reviewed by this court, or lack merit.

A.  Claims

The warden interprets Mentus's first claim, challenging the state court decision to provide less than the amount requested for an expert witness, as four separate claims: ineffective assistance of counsel, denial of the right to a fair trial due to insufficient expert witness funds, denial of his right to due process, and denial of his right to equal protection. The warden is mistaken. As the magistrate judge explained in the order directing service, Mentus raises two claims that allege violations of several constitutional rights: (1) the trial court denied him sufficient funds to hire an expert witness which violated his right to the effective assistance of counsel under the Sixth Amendment, the due process right to present a defense under the Fifth and Fourteenth Amendments, and his right to equal protection under the Fourteenth Amendment;[2] and (2) the trial court failed to sustain his objection to the prosecutor's closing argument which violated his right to a fair trial under the Fifth and Fourteenth Amendments.

---

[2]The rights of indigent defendants to the tools necessary to present a defense may implicate the Sixth Amendment right to the assistance of counsel, the Fifth and Fourteenth Amendment rights to due process, and the Fourteenth Amendment right to equal protection. See Ake v. Oklahoma, 470 U.S. 68, 76-77 & 87 n.13 (1985); Strickland v. Washington, 466 U.S. 668, 686 (1984).

Therefore, to the extent the warden's motion is premised on additional claims, not identified by the magistrate judge, the motion does not address Mentus's petition and is not considered.

B.  Exhaustion and Procedural Default

The warden primarily attacks Mentus's claims on procedural grounds.  He argues that the claim about funds for an expert witness was not exhausted or is procedurally defaulted.  That argument is contrary to the magistrate judge's preliminary review, but the warden does not distinguish the magistrate's analysis.  Doc. 3 at 3.  Therefore, the warden has not shown that he is entitled to summary judgment on those grounds.

The warden also argues that because the New Hampshire Supreme Court ruled that the prosecutor did not misstate the applicable law in his closing argument based on state law, that decision cannot be reviewed here.  The warden appears to be mistaken.  The New Hampshire Supreme Court did not reject that claim because Mentus failed to meet a procedural requirement. See Olszewski v. Spencer, 466 F.3d 47, 62 (1st Cir. 2006). Instead, the supreme court decided under New Hampshire law "that the trial judge's overruling of the defendant's objection was not an unsustainable exercise of discretion."  Mentus, 162 N.H. at 799.

C.  <u>Review under Section 2254</u>

Mentus challenges the legal basis, not the factual basis, for the state court's decision.³  When a habeas petitioner's claim was adjudicated on the merits in state court, the petitioner must show that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or [] resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  If the state court relied exclusively on state law in deciding the claim, this court uses a de novo standard to review the claim.  <u>Wright v. Marshall</u>, 656 F.3d 102, 107-08 (1st Cir. 2011).  A state court decision that relies on state law which is at least as protective of the defendant's rights as federal law, however, is reviewed under the deferential standard.  <u>Morgan v. Dickhaut</u>, 677 F.3d 39, 49 (1st Cir. 2012).

The warden recites the deferential standard of review under § 2254(d) but then states that "[t]he state court applied state law in examining the petitioner's claim."  Doc. 6 at 7.  The

---

³The warden states that the New Hampshire Supreme Court's ruling that the prosecutor did not misstate the law in his closing argument is a factual finding about the prosecutor's intent.  The court disagrees.

7

warden does not acknowledge the different standards of review or explain which should apply.  To the extent the warden addresses Mentus's claims on the merits, the analysis does not explicitly apply either standard.  In addition, the warden has not clearly presented applicable Supreme Court precedent to show that he is entitled to summary judgment on the merits of the claims.

### Conclusion

For the foregoing reasons, the warden's motion for summary judgment (document no. 6) is denied without prejudice to filing a properly supported motion for summary judgment.

SO ORDERED.

                                                                   Joseph A. DiClerico, Jr.
                                                                   United States District Judge

October 10, 2013

cc:   Adam Mentus #84710, pro se
       Elizabeth C. Woodcock, Esquire