UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Adam Mentus

     v.                                  Civil No. 12-cv-447-JD
                                        Opinion No. 2014 DNH 119
Warden, New Hampshire
State Prison


O R D E R


     Adam Mentus, proceeding pro se, filed a petition for a writ
of habeas corpus pursuant to 28 U.S.C. § 2254.  In his petition,
Mentus challenged his state court manslaughter conviction on the
grounds that the state court violated his Fifth, Sixth, and
Fourteenth Amendment rights by failing to authorize the full
amount he requested to hire a gun expert and that the
prosecutor's closing argument violated his right to a fair trial
under the Fifth and Fourteenth Amendments.  The warden moves for
summary judgment.[1]  Mentus objects to the motion for summary
judgment only as to his claim based on funding for an expert
witness and concedes summary judgment as to his claim based on
the prosecutor's closing argument.[2]

---

    [1]The warden's first motion for summary judgment, which was
unopposed, was denied without prejudice because of errors and
insufficient support.

    [2]After the warden filed the second motion for summary
judgment, Mentus moved for appointment of counsel to represent
him.  The motion was granted.  Mentus's first appointed counsel
withdrew, and new counsel was appointed on January 13, 2014.
Mentus has been represented since that time and is represented
for purposes of the summary judgment motion.

Standard of Review

In habeas proceedings as in other civil cases, "[s]ummary judgment is proper if there is no genuine issue as to any material fact and the undisputed facts show that the moving party is entitled to judgment as a matter of law."  Kuperman v. Wrenn, 645 F.3d 69, 73 (1st Cir. 2011); see also Fed. R. Civ. P. 81(a)(4).

Background[3]

In June of 2008, Mentus and his friend, Nathan Caron, drove to a firearms store where Caron bought a handgun.  Later in the day, Mentus and three others, including Deirdre Budzyna, planned to go to a sandpit to fire the gun.  Mentus loaded the gun before leaving.  Budzyna was driving, and Mentus sat behind her.

Moments after getting into the car, Mentus took the loaded gun out of his pocket to put it under his seat.  As he reached down with the gun in his right hand, it fired.  The bullet went through the seat and hit Budzyna, puncturing her lung.  She got out of the car, and Mentus called 911.  Budzyna later died at the hospital.

Mentus was charged with manslaughter.  Because he was indigent, Mentus was represented by counsel from the New

---

[3]The warden did not provide a factual statement in support of the second motion for summary judgment but, instead, incorporated by reference the factual statement from the original motion.  But see LR 7.1(a)(3).  The court relies on the facts provided in State v. Mentus, 162 N.H. 792 (2011).

Hampshire Public Defender's office.  The defense intended to pursue a theory that the gun had misfired.

Before trial, counsel asked the court to authorize, pursuant to RSA 604-A:6, payment of $3,000.00 to hire Gregory Danas as a firearms expert.  The court held a hearing and stated that an explanation was needed as to why $3,000.00 was necessary for the expert.  The court initially authorized $750.00 but said that the amount would be increased if detailed information was provided about what the expert would do for $3,000.00.  The court increased the allocation to $1,200.00, which was still not enough to hire Danas.

Instead of Danas, the defense hired a lawyer who was involved in litigation against firearm manufacturers to serve as the firearms expert.  The court ruled that the lawyer was not qualified to testify as an expert.  As a result, Mentus did not have a firearms expert at trial to support his defense that the gun misfired.

A firearms expert examined the gun and testified on behalf of the state.  On examination of the gun, the state's expert found the safety and trigger pull to be in good working order. The expert found a warning that the model of gun could fire if it were dropped, creating an extremely dangerous situation.  The expert tested the gun for that problem, but the gun did not misfire.  The expert testified as to all of that information at trial.

Mentus was convicted of manslaughter and was sentenced to ten to twenty years in prison.  On appeal, Mentus challenged the trial court's decision to authorize only $1,200.00 for his expert witness, rather than the full amount he requested.  The trial court's decisions were affirmed by the New Hampshire Supreme Court.

## Discussion

In support of summary judgment, the warden contends that the state court's decision affirming the trial court's rulings on funding for an expert witness was not contrary to or an unreasonable application of Supreme Court precedent.  Mentus objects to summary judgment, arguing that the de novo standard of review applies and that the New Hampshire Supreme Court's decision violates his due process rights.

A.   Review under Section 2254

When a habeas petitioner's claim was adjudicated on the merits in state court, the petitioner must show that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or [] resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  If, however, the federal claim was not adjudicated on the merits, a de novo standard

applies.  <u>Fortini v. Murphy</u>, 257 F.3d 39, 47 (1st Cir. 2001),
<u>accord</u> <u>Wright v. Marshall</u>, 656 F.3d 102, 107-08 (1st Cir. 2011).
"When a federal claim has been presented to a state court and the
state court has denied relief, it may be presumed that the state
court adjudicated the claim on the merits in the absence of any
indication or state-law procedural principles to the contrary."
<u>Harrington v. Richter</u>, 131 S. Ct. 770, 784-85 (2011).

In the trial court and on appeal, Mentus raised both federal
constitutional grounds and state law grounds to support his
request for funds to hire an expert witness.  The New Hampshire
Supreme Court reviewed Mentus's expert claim under state law,
stating that "'[r]egardless of whether a defendant has invoked
equal protection, fundamental fairness necessary for due process,
or the right to services to enable his counsel to assist him
effectively, an indigent defendant's access to experts has been
said to lie within the sound discretion of the court.'"  <u>Mentus</u>,
162 N.H. at 795 (quoting <u>State v. Wellington</u>, 150 N.H. 782, 784
(2004)).  The supreme court further stated that "to succeed on
appeal the defendant 'must demonstrate by clear and convincing
evidence that his request to the court included as complete a
showing of necessity for the desired services as could be
expected of him, and that the denial of funds substantially
prejudiced him at trial.'"  <u>Mentus</u>, 162 N.H. at 796 (quoting
<u>Wellington</u>, 150 N.H. at 784).  The court concluded under the
state law standard that Mentus failed to show that he had been
prejudiced, and affirmed the trial court's decision.

5

Here, the warden contends that although the state court did not address Mentus's federal claim, the deferential standard of review applies because the state standard is the "functional equivalent" of the federal standard.  Mentus argues that his claim should be addressed under the de novo standard because the New Hampshire Supreme Court did not decide his federal claim on the merits.  It is not necessary to resolve the issue of which standard applies here because even under the de novo standard, Mentus's petition fails.  See Kirwan v. Spencer, 631 F.3d 582, 587-88 (1st Cir. 2011).

B.  Expert Witness Claim

The court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  § 2254(a).  In his petition, Mentus alleged that the state court violated his Fifth, Sixth, and Fourteenth Amendment rights by denying him the full amount he requested to hire a firearms expert witness for his defense.  For purposes of opposing summary judgment, Mentus argues only that due process required the state to provide him the funds he requested for a gun expert at trial.

The Supreme Court has held that states must provide indigent criminal defendants "with the basic tools of an adequate defense . . . ."  Britt v. North Carolina, 404 U.S. 226, 227 (1971).

Based on that requirement, the Supreme Court recognized an indigent criminal defendant's right to have access to a mental health expert when the defendant's mental health will be a significant factor at trial.[4]  Ake v. Oklahoma, 470 U.S. 68, 83 (1985).  Although indigent criminal defendants are entitled to "an adequate opportunity to present their claims within the adversary system," Ross v. Moffitt, 417 U.S. 600, 612 (1974), they are not necessarily entitled to all requested services or to the expert of their choice, Ake, 470 U.S. at 83.

The trial court provided funds for the defense to hire a gun expert in Mentus's case.  Mentus contends that because the funds provided were insufficient to hire the expert he had chosen, his due process rights were violated.  Mentus argues that a gun expert was necessary to help his counsel prepare to cross examine the state's gun expert as well as to counter the testimony of the state's gun expert.  Mentus also argues that his counsel was

---

[4]The Supreme Court has not decided if or when an indigent criminal defendant would be entitled to the assistance of an expert witness for matters other than mental health.  Caldwell v. Mississippi, 472 U.S. 320, 323 n.1 (1985); see also Gary v. Hall, 558 F.3d 1229, 1254 (11th Cir. 2009); Soto v. Adams, 2012 WL 4936479, at *7 (C.D. Cal. June 8, 2012).  The First Circuit has not addressed the issue of whether the rule in Ake would apply to non-psychiatric expert witnesses.  Other federal courts have come to different conclusions about the application of Ake in contexts outside of mental health.  See Babick v. Berghuis, 620 F.3d 571, 579 (6th Cir. 2010); United States v. Rodriguez-Felix, 450 F.3d 1117, 1127 (10th Cir. 2006); Bridges v. Beard, --- F. Supp. 2d ---, 2013 WL 1742305, at *66, n.17 (E.D. Pa. Apr. 23, 2013); see also Blanco v. Sec'y, Fl. Dep't of Corrs., 688 F.3d 1211, 1228-29 (11th Cir. 2012); Wogenstahl v. Mitchell, 668 F.3d 307, 340 (6th Cir. 2012).

forced to "bargain shop" for an expert, which resulted in hiring
an expert who was not qualified and was not permitted to testify.

While Mentus states that the expert of his choice was not
available with the limited funds provided and that the expert the
defense hired was not qualified, he does not show or even argue
that no competent expert was available. As is noted above, due
process does not require that indigent defendants be provided
"all the assistance that [a] wealthier counterpart might buy."
Ake, 470 U.S. at 77.

In addition, the New Hampshire Supreme Court found that
Mentus's misfire theory was not plausible because his various
versions of how the shooting occurred were not consistent with
the way in which that particular gun could have misfired.
Mentus, 162 N.H. at 796-97. Mentus does not challenge that
finding here. See § 2254(e)(1). The New Hampshire Supreme Court
also concluded that the jury could have found that Mentus's
conduct was reckless within the meaning of the manslaughter
statute, whether or not the gun misfired.[5] Id. at 797-98. Those
findings undermine the significance of a gun expert for Mentus's
defense.

Therefore, Mentus has not shown that he is incarcerated
because the state court's decision to provide $1,200 instead of

---

[5]Despite his knowledge of gun safety rules and his knowledge
that his conduct violated those rules, Mentus brought a loaded
gun into the car and handled the gun, pointing it at Budzyna's
seat, without checking to see if the safety was on.

$3,000 for the defense to hire a gun expert violated his due process rights.

## Conclusion

For the foregoing reasons, the warden's motion for summary judgment (document no. 8) is granted.

The petition for habeas corpus relief (document no. 1) is denied.

Because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2), the court declines to issue a certificate of appealability.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

May 29, 2014

cc:  David W. Ruoff, Esq.
     Elizabeth C. Woodcock, Esq.